SUCCESSION OF HENRY FLETCHER, f. m. c.—Opposition of REV. G. J. DUQUESNAY.

An appeal taken on behalf of the State by an officer unauthorized to prosecute such appeal, which is therefore dismissed, does not bar a subsequent appeal from the same judgment, by an assignee of the State whose interests have been affected by the judgment.

The universal legatee having seizin of the property of a succession, is not accountable for the revenues of a particular legacy, before delivery, or a demand of delivery made of him in due form by the particular legatee.  C. C. 1619.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
*C. Roselius* and *W. C. Miller*, for appellants.  *A. Robert, Collens & Wooldridge*, and *J. Foulhouze*, for appellees.

SPOFFORD, J.  This succession has been heretofore decreed to belong to the State.  See *Succession of Fletcher*, 11 An., 59.

Some months afterwards, when the succession was about to be wound up, pursuant to that decree, the *Rev. G. J. Duquesnay*, in his quality as Curate of the Church of St. Louis, filed an opposition to the tableau of distribution, upon which he claimed to be classed as a creditor of the succession for the sum of $6000.  His opposition was sustained to the amount of $5141 24, by a judgment of the District Court, rendered on the 14th of January, 1857.

From this decree *Henry C. Miller*, an attorney appointed by the Auditor of this State, immediately prosecuted an appeal to this court.

This appeal was on motion dismissed by this court, on the ground that an attorney appointed by the Auditor had no right to ask an appeal in the name of the State from a judgment of one of the courts of New Orleans.  See *Succession of Fletcher*, 12 An., 498.

Pending that appeal, the State of Louisiana renounced and assigned its rights in the *Succession of Fletcher* to *Aspasie* and *Gatiche Bohan*, free women of color, (who are the present appellants,) by a legislative Act, approved March 19th

1857. (Sess. Acts, 202). These parties were specially empowered by the said Act to take charge of said estate to the same extent that the State of Louisiana was then entitled.

On the 16th June, 1857, *Aspasie* and *Catiche Boham* asked for and obtained an order of appeal from the judgment of the 14th January previous, sustaining the opposition of *Duquesnay*. This appeal is now before us.

*Duquesnay* has moved to dismiss the appeal, upon grounds which appear to us untenable.

Under our decision, the former order of appeal was a mere nullity, because not asked for by any person competent to represent the State. The State, being decreed heir to the succession, had an obvious interest in reversing a judgment which reduced the sum coming into the public treasury more than $5000. The State had a right to appeal, which would last one year from the time of the rendition of the judgment. Having, in contemplation of law, taken no appeal, the State had waived none of its rights on the 19th March, 1857, when it transferred them, such as they were, to the present appellants. Among those rights was the right of appealing from the judgment on *Duquesnay's* opposition. *Asphasie* and *Catiche Boham*, by virtue of their subrogation to the rights of the State, acquired the right to appeal, which the District Judge properly accorded to them.

All the other grounds urged for a dismissal should have been urged upon the rule taken by *Duquesnay*, to set aside the order of appeal in the lower court. The identity of the appellants as the parties named in the Act of March 19th, 1857, and their compliance with the terms of that Act, were not contested by the rule below, and we see no evidence in the record to justify any doubt here upon these points.

The motion to dismiss is, therefore, overruled.

The opposition of the Rev. Curate of the Church of St. Louis was founded upon the allegation that the deceased *Henry Fletcher* was accountable and legally liable to him for the sum of $6000, for the rents of certain real estate held and enjoyed by *Fletcher*, as the testamentary executor of the *Widow Bernard Couvent*, from the 1st May, 1837, to the 1st May, 1847.

The origin of this stale demand appears to be this :

In her last will, the *Widow Couvent, f. w. c.*, left the following particular bequest:

" Je veux et ordonne que mon terrain à l'encoignure des rues Grands Hommes et de l'Union soit à perpétuité consacré et employé à l'établissement d'une école gratuite pour les orphelins de couleur du faubourg Marigny.

Cette école s'établira sous la surveillance du révérend Père Maenhaut, et, en cas de mort ou d'absence, se trouvera sous la surveillance de ses successeurs en office. En conséquence, j'entends que les dits terrains et édifices ne soient jamais vendus sous quelque prétexte que ce soit, mais au contraire qu'il y soit fait par souscription ou autrement toutes les améliorations et additions que le temps et le nombre des enfants orphelins pourront exiger."

She then instituted *Henry Fletcher*, whom she had previously appointed executor of this will *with seizin* of her property, her universal legatee, in the following terms :

"Mes dettes et mes legs une fois payés, dans le cas qu'il resterait quelque chose, je nomme et institue le dit *Henry Fletcher*, mon légataire universel,

pour par lui en disposer et en faire la distribution, suivant les instructions que je lui donnerai de vive voix."

The testatrix died about the 1st of May, 1837.

It does not appear that the *Curé Maenhaut* made an attempt to carry out the scheme of the testatrix, or to establish the contemplated school, until the spring of 1847. In April of that year, a number of free colored persons formed themselves into a voluntary corporation, under the general law, which was styled "La Société Catholique pour l'instruction des Orphelais dans l'indigence."

On the 6th of May following, by an authentic act, to which *Henry Fletcher* was a party, *Maenhaut* ceded to this society the property at the corner of Greatmen and Union streets, bequeathed as aforesaid by the *Widow Couvent*.

In this act is the following declaration : " Et le dit *Rev'd. C. Maenhaut* a de plus exposé que jusqu'à ce jour, il n'a vu la possibilité de mettre à exécution les volontés de la testatrice, et qu'en conséquence *Henry Fletcher*, l'exécuteur testamentaire et légataire universel de la dite veuve *Bernard Couvent*, a continué jusqu'à présent à jouir lui-même des revenus de la propriété dont il s'agit, sans que lui le *Révérend C. Maenhaut* s'y soit le moindrement immiscé."

It does not appear that there was ever any written recognition on the part of *Fletcher*, that he was accountable to any one for the rents of this property from the death of the testatrix up to the date of the cession.

No judicial demand was made by any one for an account for those rents, until June, 1856, more than nine years after *Fletcher* had ceased to possess the property, and nearly three years after his death.

The opponent *Duquesnay* is the successor in office of the *Rev'd. Curé Maenhaut.* He now demands that the revenues of the aforesaid property from 1837 to 1847, be paid to him out of *Fletcher's succession*, by virtue of the right of *survillance* over the school, given him by the will of the *Widow Couvent.*

We think it clear that the will gives him no right of action for those rents. Not to notice other obstacles, it will suffice to say that *Fletcher* had the lawful seizin of the property, that it was bequeathed as a special legacy to found a school which, not he, but the *Curé Maenhaut* was to found, and that he was never in default for not delivering the legacy. Indeed, the opponent's predecessor, *Maenhaut*, when he received the property and devoted it to its charitable destination, expressly declared that, up to the 6th of May, 1847, it had not been possible to put the wishes of the testatrix into execution.

*Fletcher* then, as the universal legatee of the testatrix, was proprietor of the revenues up to that time, since she made no express declaration in her will that they should belong to any one else before the establishment of the school by the *Curé Maenhaut.*

" Every legacy under a particular title gives to the legatee, from the day of the testator's death, a right to the thing bequeathed, which right may be transmitted to his heirs or assigns; and this takes place as well in testamentary dispositions, universal or under an universal title, as in those made under a particular title.

" Nevertheless, the particular legatee can take possession of the thing bequeathed, or claim the proceeds, or interest thereof, only from the day the demand of delivery was formed according to the order herein before established,

SUCCESSION OF    or from the day on which that delivery was voluntarily granted to him."   C.
.FLETCHER.       C. 1619.

But the opponent *Duquesnay* also claimed the amount of these revenues under an alleged oral promise of *Fletcher*.

If he did not owe them, such promise would be a nude pact. But the evidence is too uncertain and inconclusive to establish a valid and perfect contract on the part of the deceased to pay a specific sum of money, even if there were a natural obligation to support such a contract.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, so far as it respects the opposition of *J. L. Duquesnay*, curate, &c, be avoided and reversed, and that the opposition of said *Duquesnay* to the account and tableau of distribution herein filed, be dismissed, the said opponent paying the costs thereof in the District Court, and the costs of this appeal. And it is further ordered, that in all other respects, the judgment appealed from be affirmed.